City of Philadelphia    :
           :
     v.     :
           :
Dana Williams and    :
Khaleelah Reed-Williams,  :  No. 863 C.D. 2017
     Appellants :  Argued: June 7, 2018


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY        FILED: June 27, 2018


    Khaleelah Reed-Williams (Reed-Williams) appeals from the Philadelphia County Common Pleas Court's (trial court) May 18, 2017 order denying her Motion to Redeem Premises, and to Set-Aside Sheriff's Sale regarding property located at 2900 North Bailey Street, Philadelphia (Property). Reed-Williams presents two issues for this Court's review: (1) whether the trial court erred in denying her redemption motion and (2) whether the trial court erred in failing to set aside the sheriff's sale for equitable reasons. After review, we affirm.

    On October 7, 2015, the City of Philadelphia (City) filed a Petition for a Rule to Show Cause Why Property Should Not Be Sold Free And Clear Of All Claims, Liens, Mortgages, Ground Rents, Charges And Estates (Petition) pursuant to the Pennsylvania Municipal Claims and Tax Liens Act (MCTLA).[1] The Petition pertained to unpaid real estate taxes and interest, penalties, fees and costs for the

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505.

Property, totaling $3,006.28.[2]  In the Petition, the City represented that it had obtained a Tax Information Certificate (TIC) for the Property.  The City attached to the Petition a Statement of Account evidencing the aforementioned tax liability.  It also attached the TIC which described the Property, identified the registered and record owners as Reed-Williams and Dana Williams, her husband (Husband), and provided their mailing addresses,[3] and listed all tax and municipal claims, liens, mortgages, ground rents, charges and estates of record against the Property.  The Petition identified Reed-Williams and Husband and the Pennsylvania Department of Revenue as respondents, and listed the mailing addresses from the TIC for Reed-Williams and Husband.  On the same date, the trial court issued a Rule Returnable (Rule) and scheduled a hearing for January 6, 2016.  On December 1, 2015, the City filed an affidavit evidencing that the Property was posted with the Petition and the Rule on November 24, 2015.  On December 8, 2015, the City filed an affidavit of service of the Petition and Rule representing that the Petition and Rule were served by first class mail and by certified mail upon all interested parties.  No response to the Petition was filed and no respondent appeared at the January 6, 2016 hearing.  On March 4, 2016, the trial court entered a Decree of Sheriff Sale for the Property (Decree).  A sheriff's sale of the Property was scheduled for June 21, 2016.  On May 6, 2016, the City sent the Decree and notice of the scheduled sheriff's sale by first class mail to Reed-Williams and Husband and other parties entitled to notice, and filed an affidavit of service on May 9, 2016.

---

[2] The Petition alleged that the unpaid amount continued to accrue additional sums until paid.

[3] The TIC listed two "Possible Mailing Addresses:" (1) the Property address, 2900 North Bailey Street, Philadelphia, PA 19132-1205; and (2) 3383 Friendship Street, Philadelphia, PA 19149.  Reproduced Record at A8.  Both Reed-Williams and Husband were named at each address.  Additional addresses for Reed-Williams and Husband were also contained in the encumbrances portion of the TIC.

On May 12, 2016, Reed-Williams approached the City's collection counsel, GRB Law (GRB), and obtained an owner occupied payment agreement (OOPA) application.[4] On May 23, 2016, she returned to GRB's office and submitted the completed OOPA application and supporting documentation. By June 6, 2016 letter to Reed-Williams, GRB requested residency proof and documentation pertaining to her name change in order to approve the OOPA application. Accordingly, the City continued the June 21, 2016 sheriff's sale to August 16, 2016. By July 15, 2016 letter, GRB informed Reed-Williams that the OOPA application had been denied for failing to establish residency at the Property.

On August 4, 2016, Reed-Williams entered into an installment agreement (Agreement) with GRB to resolve the outstanding tax obligation. Pursuant to the Agreement, Reed-Williams was required to make a $1,297.16 initial payment and then make twelve $324.29 monthly payments. Reed-Williams made the initial payment on that date. The City continued the scheduled August 16, 2016 sheriff's sale to October 18, 2016. Reed-Williams did not make the first installment payment due on October 1, 2016, and GRB notified Reed-Williams that she had breached the Agreement and provided her instructions to cure. The scheduled October 18, 2016 sheriff's sale was stayed to permit Reed-Williams time to cure her breach. No response or payment was received from Reed-Williams.

On January 25, 2017, the Property was relisted for sheriff's sale on March 9, 2017 under a new Book and Writ number, 1703-5054. The City sent the Decree and notice of the March 9, 2017 sheriff's sale by first class mail to Reed-Williams and Husband and other parties entitled to notice. The City filed an affidavit

---

[4] According to the City's website, "[t]he . . . OOPA[] program allows homeowners to make affordable monthly payments on property taxes that are past due. To be eligible, [an applicant] must live in the home that [he/she] own[s]." https://beta.phila.gov/services/payments-assistance-taxes/payment-plans/owner-occupied-real-estate-tax-payment-agreement/ (last visited June 12, 2018).

of service on January 25, 2017.  On March 9, 2017, the Property was sold at sheriff's sale to LLL Properties, LLC for $25,500.00 (LLL Properties).

On March 21, 2017, Reed-Williams, pro se, filed a document titled "Motion to Set Aside Sheriff['s] Sale" (Pro Se Motion to Set Aside).  Reproduced Record (R.R.) at A25.  Reed-Williams therein stated her address as 2900 N. Bailey Street, Philadelphia, and alleged:

> Lack of notice was provided to me in regard to the [s]heriff's [s]ale of [the Property].  There were no notices posted on the [P]roperty.  Due to the lack of notice provided by [GRB] my property was sold at [s]heriff['s] [s]ale [on March 9, 2017].  Had I known about the upcoming sale, I would have made arrangements to pay in order to stop the sale.  I would like to regain ownership of [the Property].

R.R. at A28.  On March 22, 2017, Reed-Williams filed a "Praecipe to Attach" (Praecipe to Attach), wherein she requested:  "Please attach to [Pro Se Motion to Set Aside]  [a] copy of my [Pennsylvania driver's license] with correct address."  R.R. at A31.  Reed-Williams attached a photocopy of her driver's license that listed her address as 3383 Frederick Street, Philadelphia.  On the photocopy, above her driver's license, she wrote: "Below you will find my address (correct address)."  R.R. at A33.  She also attached a copy of the Civil Docket Report that stated her address (allegedly incorrectly) as 3383 Friendship Street, Philadelphia.[5]  On April 4, 2017, the City filed an answer opposing the Pro Se Motion to Set Aside.  The trial court scheduled a May 18, 2017 hearing.  On May 12, 2017, DY Properties, LLC (DY Properties), which had purchased the Property from LLL Properties, filed a motion to intervene.

On May 18, 2017, Reed-Williams' counsel filed a Petition to Set Aside and Strike Sheriff's Sale or in the Alternative for Redemption of Real Property Known as 2900 N. Bailey Street, Philadelphia, PA 19132 (Petition to Set Aside or

---

[5] Each of the aforementioned Affidavits of Service contained both the Friendship Street and Frederick Street addresses.

4

Redeem).  Reed-Williams alleged in relevant part therein,  that Reed-Williams and Husband "run a store front business on the first floor and" that Reed-Williams "resides on the second floor."  R.R. at A73.  She also averred that Reed-Williams, "a continuous occupant of the [P]roperty has never received any notices of said Petition.  Further, since [Reed-Williams and Husband] operate a business on the first floor they also did not receive any notices at the business location."  *Id.*  Reed-Williams also alleged in the Petition to Set Aside or Redeem with respect to Reed-Williams' purported right to redemption that Reed-Williams and Husband were the legal owners and occupied the Property "continuously for years, as their primary residence and continued to occupy [the] Property.  [Reed-Williams and Husband] continue to run a business and reside at [the P]roperty."  R.R. at A74.  Reed-Williams also averred that she is "ready, willing and able to pay the amount bid at [s]heriff's [s]ale[,]" and other necessary associated expenses.  *Id.*

At the May 18, 2017 hearing, Reed-Williams' counsel did not contest that the deed was recorded on April 11, 2017.  *See* R.R. at A146.  Reed-Williams testified that she runs a licensed daycare center at the Property, that she lives on the second floor and that she has done so for at least ninety days, "[s]ince last April[,]" after a domestic relations incident occurred between Reed-Williams and Husband resulting in a restraining order.  R.R. at A168.  Reed-Williams also offered and described photographs of her purported residence at the Property.  On cross-examination, Reed-Williams acknowledged that she had stated her address as 3383 Frederick Street, Philadelphia, rather than that of the Property, in her earlier-filed Praecipe to Attach.  She insisted, however, that either address would be legitimate.  *See* R.R. at A154-A156.  She further testified that the utilities to the Property are in her name rather than in the name of the daycare center.  She admitted that her tax returns would reveal that her residence was the Friendship Street address.  Following the hearing, the trial court denied the Pro Se Motion to Set Aside and the Petition to

Set Aside and Redeem, and granted DY Properties' intervention motion. On June 7, 2017, Reed-Williams filed a reconsideration motion which the trial court denied. Reed-Williams appealed to this Court.[6]

Reed-Williams first argues that the trial court erred because she has the absolute right to redeem the Property. We disagree.

Section 32 of the MCTLA provides:

(a) The owner of any property sold under a tax or municipal claim, . . . may, <u>except as provided in subsection (c)</u> of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. . . .

. . . .

(c) Notwithstanding any other provision of law to the contrary, in any city . . . <u>there shall be no redemption of *vacant* property by any person after the date of the acknowledgment of the sheriff's deed therefor.</u> For the purposes of this subsection, property shall be deemed to be **'vacant property'** unless it was <u>continuously occupied by the same individual or basic family unit *as a residence* for at least ninety days prior to the date of the sale</u> and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor.

---

[6] "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law." *City of Phila. v. F.A. Realty Inv'rs Corp.*, 146 A.3d 287, 293 n.9 (Pa. Cmwlth. 2016).

53 P.S. § 7293 (underline and italic emphasis added).

Thus, an individual or family who **resides** at the property continuously for at least ninety days before the date of a sheriff's sale may redeem the property within nine months from the date of the acknowledgment of the sheriff's deed. However, a property that is not used as a residence is deemed vacant under Section 32 of the MCTLA and **may only be redeemed until the sheriff's deed has been acknowledged**. Importantly, this Court has held that "a petition to redeem that is **filed** after acknowledgment of the deed is prohibited; but, if the petition is **filed** before acknowledgment and the redemption process is initiated, subsequent acknowledgment does not unilaterally terminate an owner's statutory right to redeem." *City of Phila. v. F.A. Realty Inv'rs Corp.*, 146 A.3d 287, 299 (Pa. Cmwlth. 2016) (emphasis added).

Reed-Williams testified before the trial court that she resided at the Property and had done so continuously for at least 90 days before the sheriff's sale. Notwithstanding, the trial court explained:

> Appellants are not entitled to redemption of the Property because the trial court determined that the Property was 'vacant property' under the [MCTLA]. Although Appellants argue that they operate a daycare on the first floor and that Reed-Williams resides on the second floor, their argument was contradicted by the record and Reed-Williams['] own filings. First, Reed-Williams['] own pleadings show that she lived at 3383 Friendship Street, and not at the Property located at 2900 N. Bailey Street. [*See* R.R. at A33.] Second, Reed-William[s'] current Pennsylvania driver's license listed her address as 3383 Frederick Street, Philadelphia. [*See id*.] Third, the floor plans of the Property, which were obtained from the zoning archives, do not identify a residence on the second floor. [*See* R.R. at A157.] Fourth, the Property cannot accommodate two separate uses (a daycare and a residence)

7

as it has only [] one utility meter.[7]  Fifth, the OOPA denial letter dated July 15, 2016 was based upon her failure to establish residency at the Property.  [*See* Reed-Williams Second Amended Br. at 6.]  And, sixth, the trial court discredited Reed-Williams' testimony that she resided at the Property based upon her demeanor, manner of testifying and lack of corroborative evidence.

R.R. at A123-A124 (footnote omitted).

"[Q]uestions of credibility and the resolution of testimonial conflicts are for the trial court to decide."  *In re Funds in the Possession of Conemaugh Twp. Supervisors*, 724 A.2d 990, 993 (Pa. Cmwlth. 1999), *aff'd*, 753 A.2d 788 (Pa. 2000). A review of the record demonstrates that the trial court's findings are supported by substantial evidence.  Based thereon, as well as the trial court's credibility determinations, the trial court properly concluded that the Property was "vacant property" under Section 32(c) of the MCTLA.  53 P.S. § 7293(c).  Accordingly, Reed-Williams could only redeem the Property until the date the sheriff's deed was acknowledged.  *See* 53 P.S. § 7293; s*ee also City of Phila. v. F.A. Realty Inv'rs Corp.*, 95 A.3d 377 (Pa. Cmwlth. 2014).

In their brief to this Court and filings with the trial court, DY Properties and LLL Properties alleged that the Sheriff acknowledged the deed on March 31, 2017.  Although there does not appear to be any record evidence specifically demonstrating that the Sheriff acknowledged the deed on March 31, 2017,[8] Reed-Williams' counsel did concede at the May 18, 2017 hearing that "the deed was recorded on April 11[, 2017]."  R.R. at A146.  Given that the Sheriff was required to

---

[7] Although Reed-Williams was not sure whether there was only one utility meter, she testified that the electric and water bills for the building are in her name and not the daycare center, and that she did not inform the electric company that she was operating a business at the premises. *See* R.R. at A159-A160.

[8] In the City's April 4, 2017 Memorandum of Law in support of its answer to Reed-Williams' Pro Se Motion to Set Aside, the City acknowledged that "[u]pon information and belief, a Sheriff's deed to the subject property has not been acknowledged."  R.R. at A45.

acknowledge the deed before it could be recorded,[9] the deed must have been acknowledged on or prior to April 11, 2017. Thus, given the trial court's conclusion that the Property was vacant, the redemption request in Reed-Williams' counsel's May 18, 2017 Petition to Set Aside or Redeem was untimely.

Notwithstanding, Reed-Williams argues that her March 21, 2017 Pro Se Motion to Set Aside, despite its title, was actually a redemption petition, timely-filed **before** the Sheriff acknowledged the deed. We thus consider whether Reed-Williams' March 21, 2017 Pro Se Motion to Set Aside may be construed as a timely-filed redemption petition.

The requirements for a redemption petition are set forth in Section 32(b) of the MCTLA which provides:

> Any person entitled to redeem may present his petition to the proper court, **setting forth** the facts, and **his readiness to pay the redemption money**; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.

53 P.S. § 7293(b) (emphasis added).

In asserting that her Pro Se Motion to Set Aside was actually intended to be a redemption petition, Reed-Williams minimizes her failure to comply with Section 32(b) of the MCTLA based on the principle that "[t]he [MCTLA] must be liberally construed to effect its object and promote justice." *F.A. Realty*, 146 A.3d at 298. She also invokes Pennsylvania Rule of Civil Procedure No. 126 which states:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any

---

[9] *See* Pennsylvania Rule of Civil Procedure No. 3135.

9

error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. No. 126. She further argues:

> Here[,] the Pro[]Se Motion [to Set Aside] was filed shortly after [] Reed-Williams learned of the Sale. [] Reed-Williams discussed her intent and willingness to regain [the P]roperty. She never identified the [m]otion itself as one to Strike the Sheriff's Sale; that name was provided only in the Motion Court Cover Sheet which required her to place it in a certain category. She raised the issue of redemption. The [trial] court should have granted it, because regardless if [sic] [the Property] was vacant, she had the absolute right to redeem the [P]roperty.

Reed-Williams Second Amended Br. at 12.

Contrary to Reed-Williams' contention, this Court may not treat her Pro Se Motion to Set Aside as a redemption petition. Redemption is a separate method of regaining a property sold at sheriff's sale. The Court has explained:

> With regard to the issue of redemption, we note that the **redemption** issue **is separate and distinct from that of the petition to set aside the sheriff's sale.** Our [C]ourt looks only to the propriety of the sheriff's sale, not whether the defendant in the *scire facias* proceeding had a right of redemption.

*Allegheny Cty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1247 n.8 (Pa. Cmwlth. 2009) (emphasis added). Such distinction is not simply an "error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. No. 126. Rather, it is a substantially different claim.

Notably, in her Pro Se Motion to Set Aside, which was titled "Motion to Set Aside Sheriff['s] Sale," Reed-Williams did **not** "set[] forth . . . [her] readiness to pay the redemption money[.]" R.R. at A25-A28, 53 P.S. § 7293(b). Instead, Reed-Williams' Pro Se Motion to Set Aside raised issues relevant in a petition to set aside a sheriff's sale. Therein, she objected to an alleged lack of prior notice, explained that

if she had known of the sale, she would have made payment arrangements to stop it, and averred that she would like to "regain ownership of [her] property." R.R. at A28. Lack of notice is relevant to a decision as to whether to set aside a sheriff's sale, **not** a property owner's right to redemption which, subject to the statutory requirements, is permissible even if the property owner received notice of the sheriff's sale. This Court will not construe Reed-Williams' "separate and distinct" Pro Se Motion to Set Aside as a redemption petition. *Allegheny Cty.*, 974 A.2d at 1247 n.8. Accordingly, because Reed-Williams' March 21, 2017 Pro Se Motion to Set Aside was not a redemption petition, and her counsel's Petition to Set Aside or Redeem was not filed until May 18, 2017, it was untimely. Thus, the trial court properly concluded that Reed-Williams no longer had the right to redeem the Property.

Reed-Williams next contends that equity requires the sheriff's sale be set aside and that the trial court erred when it denied her relief.[10] Specifically, Reed-Williams asserts that she did not receive notice of the March 9, 2017 sheriff's sale. She also argues that failure to set aside the sheriff's sale will result in her losing her home and business. Further, she contends that given the relatively minimal taxes owed, the City should have placed a lien on the Property and collected interest rather than sell the Property.

> This Court has explained:

> In general, a petition to set aside a sheriff sale is governed by the Pennsylvania Rules of Civil Procedure which provide, in pertinent part, that 'the court, may upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.' Pa.R.C.P. No. 3132. *See also Allegheny Cty.* . . . , 974 A.2d [at] 1245 . . . . By its very nature, a petition to set aside a sheriff sale is an equitable proceeding, governed by equitable principles, and appellate review of

---

[10] "It is axiomatic that an equity court is primarily interested in effecting fairness between the parties." *Bold v. Bold*, 574 A.2d 552, 555 (Pa. 1990).

11

equitable matters is limited to a determination of whether the trial court committed an error of law or abused its discretion. [*Allegheny Cty.*], 974 A.2d at 1245. Notably, '[t]he purpose of sheriff's sales under the [MCTLA] . . . is not to strip the owner of his or her property but to collect municipal claims.' *City of Phila*[.] *v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013).

*U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 632 (Pa. Cmwlth. 2015).

With respect to Reed-Williams' alleged lack of notice, Section 39.2(a) MCTLA,[11] 53 P.S. §7193.2(a), establishes the service requirements for notice of a rule to show cause. It states:

> (a) In cities of the first class, notice of a rule to show cause why a property should not be sold free and clear of all encumbrances issued by a court pursuant to a petition filed by a claimant under [S]ection 31.2 of [the MCTLA[12]] shall be served by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind as follows:
>
> > (1) By posting a true and correct copy of the petition and rule on the most public part of the property;
> >
> > (2) By mailing by first class mail to the address registered by any interested party pursuant to [S]ection 39.1 of [the MCTLA[13]] a true and correct copy of the petition and rule; and
> >
> > (3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to [S]ection 39.1 of [the MCTLA], the city shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses

---

[11] Section 39.2 of the MCTLA was added by the Act of December 14, 1992, P.L. 859.

[12] Section 31.2 of the MCTLA was added by the Act of March 15, 1956, P.L. (1955) 1274, *as amended*, 53 P.S. § 7283.

[13] Section 39.1 of the MCTLA was added by the Act of December 14, 1992, P.L. 850, 53 P.S. § 7193.1.

as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

Service of notice pursuant to this section shall be deemed accomplished on the date of mailing. The city shall file an affidavit of service with the court prior to seeking a decree ordering the sale of the premises.

53 P.S. § 7193.2(a). Importantly, Section 39.2(b) of the MCTLA provides:

No party whose interest did not appear on a title search, title insurance policy or tax information certificate or who failed to accurately register his interest and address pursuant to [S]ection 39.1 of [the MCTLA] shall have standing to complain of improper notice if the city shall have complied with subsection (a) of this section. . . . **Notwithstanding any other requirement set forth in this act or any other law to the contrary, the notice required by subsection (a) of this section shall constitute the only notice required before a court may enter a decree ordering a tax sale.**

53 P.S. § 7193.2(b) (emphasis added).

The trial court found:

[A]fter conducting a title search, the City determined that [Reed-Williams and Husband] were the record owners of the Property and accordingly sent notice of the [P]etition and [R]ule by posting at the Property and by first class mail and certified mail to the addresses gleaned from the title search, which included [Reed-Williams' and Husband's] address at 3383 Friendship Street, Philadelphia as well as 338[3] Fred[e]rick Street, Philadelphia.

R.R. at A118. We agree with the trial court that the City complied with Section 39.2(a) of the MCTLA when it served notice of the Petition and Rule.

With respect to property owner notification of a court's decree ordering a sheriff's sale and the time and date of the sale, Section 39.2(c) of the MCTLA states:

**Notice of the court's decree ordering a tax sale, together with the time, place and date of the sale, shall be served by first class mail** on all parties served with the petition

13

and rule, on any parties whose interest appeared of record after the filing of the petition but before the court's decree and on any creditor who has obtained judgment against the owner of the premises prior to the date of the decree. The city shall file an affidavit of service of these notices prior to the date of the sale.

53 P.S. § 7193.2(c) (emphasis added).

The City sent the Decree and notice of sheriff's sale scheduled for June 21, 2016, by first class mail to Reed-Williams and Husband and other parties entitled to notice at several addresses including the 3383 Friendship Street, 3383 Frederick Street and the Property, and filed an affidavit of service. The sheriff's sale was subsequently rescheduled three times. When the sheriff's sale was finally rescheduled to March 9, 2017, the City sent the Decree and notice of the sheriff's sale by first class mail to Reed-Williams and Husband at the same aforementioned addresses and filed an affidavit of service. The City's notice met the requirements of Section 39.2(c) of the MCTLA,[14] and the trial court properly found that "[t]he City

---

[14] DY Properties and LLL Properties assert, and the trial court concluded, that because the sheriff's sale was continued, the City was obligated to comply with Pennsylvania Rule of Civil Procedure No. (Civil Rule) 3129.3(b), and did so. *See City of Reading v. Zeiber*, 62 A.3d 481 (Pa. Cmwlth. 2013). In contrast, the City insists that the Civil Rule does not apply "because the prior sheriff's sale was stayed in October 2016, and the Property was re-listed for sale on March 9, 2017, under a new Book and Writ number, 1703-5054." City Br. at 14. Thus, the City contends it need only have complied with Section 39.2(c) of the MCTLA.

Civil Rule 3129.3 states, in relevant part:

(a) Except as provided by subdivision (b) or special order of court, new notice shall be given as provided by [Civil] Rule 3129.2 if a sale of real property is stayed, continued, postponed or adjourned.

(b) (1) If the sale is stayed, continued, postponed or adjourned to a date certain within one hundred thirty days of the scheduled sale, notice of which sale was given as provided by [Civil] Rule 3129.2, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place fixed for the sale, no new notice as provided by [Civil] Rule 3129.2 shall be required, but there may be only two such stays, continuances, postponements or adjournments within the one hundred thirty day period without new notice.

complied with the notice requirements of the [MCTLA] by making service to [Reed-Williams and Husband] at the Frederick Street and Friendship Street addresses." R.R. at A119.

As this Court explained in *City of Philadelphia v. Rivera*, 171 A.3d 1 (Pa. Cmwlth. 2017):

> The [MCTLA] merely requires proper mailing to the necessary parties of the petition, rule and notice with the time, place and date of sale, and the filing of an affidavit certifying that the requisite notices were sent. In addition, Section 39.2(c) of the [MCTLA] does *not* require posting of the notice of sheriff's sale.
>
> Moreover, . . . the United States Supreme Court has held:
>
> > Due process[15] does not require that a property owner receive **actual notice** before the government may take his property. Rather, . . . due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane* [*v. Cent. Hanover Bank & Trust Co.*], 339 U.S. [306,] 314 . . . [(1950).]

---

Pa.R.C.P. No. 3129.3. The sheriff's sale was originally scheduled for June 21, 2016. It was continued three times within a one hundred thirty day period. Thus, according to the trial court, Civil Rule 3129.3 required the City to provide new notice in accordance with Civil Rule 3129.2. The notice requirements under Civil Rule 3129.2 are different from those in Section 39.2(c) of the MCTLA.

Notwithstanding, we need not decide whether the trial court was correct since Reed-Williams did not raise before this Court or develop in her brief the issue of the applicable rules for service of the sheriff's sale notice, and the City's compliance therewith. Accordingly, those issues are waived. *See Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Tech.)*, 881 A.2d 54 (Pa. Cmwlth. 2005). Instead, regarding notice, Reed-Williams raised only whether equity demands that the sheriff's sale be set aside given her alleged lack of notice. Thus, this Court shall address that issue.

[15] Due Process "is a flexible notion which calls for such procedural safeguards as a particular situation demands to **ensure fundamental fairness** to a potentially aggrieved litigant." *Corra v. Coll*, 451 A.2d 480, 482 (Pa. Super. 1982) (emphasis added).

15

> *Jones v. Flowers*, 547 U.S. 220, 226 . . . (2006) (citation omitted).

*Rivera*, 171 A.3d at 9 (bold emphasis omitted; emphasis added). Accordingly, "this Court has expressly recognized that adherence to the [MCTLA's] service provisions sufficiently protects a property owner's due process rights[.]" *Rivera*, 171 A.3d at 10. Further, "it has long been the law of our Commonwealth that 'proof of a mailing raises a rebuttable presumption that the mailed item was received and it is well-established that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed.'" *Samaras v. Hartwick*, 698 A.2d 71, 73 (Pa. Super. 1997) (quoting *Dep't of Transp., Bureau of Driver Licensing v. Grasse*, 606 A.2d 544, 545 (Pa. Cmwlth. 1991)). The City's compliance with the MCTLA's procedural safeguards ensured fundamental fairness with respect to notice of the sheriff's sale of the Property. Accordingly, relief in equity based on Reed-Williams' alleged lack of notice is not warranted.

Reed-Williams also argues that equity relief is appropriate for other reasons. These reasons include that denying relief will result in the loss of her home and business; that "[t]he amount of back taxes was very small: less than $2,000.00[;]"[16] and that the Property was sold for less than half of its assessed tax value.[17] Reed-Williams Second Amended Br. at 18.

---

[16] Reed-Williams' $2,000.00 calculation references only back taxes and does not include interest, and additional fees. At the time Reed-Williams entered into the Agreement, she agreed to pay approximately $5,188.00 ($1,297.00 down payment plus 12 monthly payments of $324.29) to resolve the outstanding debt. Her $1,297.00 down payment left $3,891.48 remaining due under the contract.

[17] It does not appear from the record that Reed-Williams raised before the trial court the issue of the disparity between the sale price of the Property and its assessed value. Nor does Reed-Williams develop in her brief any legal support for this assertion. Arguments raised for the first time on appeal are waived, as are those raised but not developed in a party's brief. *See Thomas v. Grimm*, 155 A.3d 128 (Pa. Cmwlth. 2017); *Am. Rock Mechs., Inc.* Therefore, the Court will not address this argument.

16

"[A] party seeking equity must have clean hands." *DuBois Dutch, LLC v. Guido*, 977 A.2d 1225, 1230 (Pa. Cmwlth. 2009). This Court is not convinced that Reed-Williams meets that standard. On November 24, 2015, the Sheriff posted the Property with the City's Petition and the trial court's Rule. On December 1, 2015, the City also served Reed-Williams by both first class and certified mail at the Property, and the Frederick Street and Friendship Street addresses. On March 4, 2016, the trial court entered its Decree ordering the sheriff's sale of the Property. On May 6, 2016, the City served the Decree and notice of the scheduled June 21, 2016 sheriff's sale by first class mail at the Property, and the same Frederick Street and Friendship Street addresses. Six days later, on May 12, 2016, Reed-Williams appeared at GRB's office to obtain an OOPA application.[18] Thereafter, GRB denied Reed-Williams's OOPA application because she could not prove she resided at the Property, and she entered into the Agreement. She submitted a downpayment and then failed to make the first installment payment, and every subsequent payment due. There is no record evidence that she made any attempt to address her Agreement default. On January 25, 2017, the City served the Decree and notice of the March 9, 2017 sheriff's sale at the Property, and the same Frederick Street and Friendship Street addresses. Finally, the trial court found that Reed-Williams' testimony was not credible, and also rejected her contention that she resided at the Property, based on her testimony, her pleadings, her driver's license and other evidence. Reviewing the aforementioned facts, this Court cannot conclude that equitable relief was warranted or that the trial court erred when it denied such relief.[19]

---

[18] Notwithstanding the highly suspect timing of her appearance at GRB's offices, a mere six days after the Decree and notice of sheriff's sale were mailed to her, Reed-Williams contends that she never received the Decree or notice. *See* Reed-Williams Second Amended Br. at 7.

[19] The trial court did not believe Reed-Williams' assertion that she resided at the Property. Thus, contrary to Reed-Williams' argument, denying equitable relief will not cause Reed-Williams "to lose . . . her home[.]" Reed-Williams Second Amended Br. at 18. Additionally, although it may appear unfair at first glance that the Property was sold in an attempt to collect a "very small" debt,

17

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

this Court cannot ignore that Reed-Williams was aware that her Property was at risk when she appeared at GRB and entered into the Agreement, and yet failed to make installment payments to satisfy that "very small" debt, and further, failed to take any steps to address her delinquency. Reed-Williams Second Amended Br. at 18.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                   :
           v.                 :
                                   :

Dana Williams and           :
Khaleelah Reed-Williams,   :   No. 863 C.D. 2017
               Appellants   :

## O R D E R

AND NOW, this 27th day of June, 2018, the Philadelphia County Common Pleas Court's May 18, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge